[No. 41915-7-II.  Division Two.  September 5, 2012.]

M. GWYN MYLES, *Individually and as Personal Representative, Appellant*, v. CLARK COUNTY, *Respondent.*

522

*Ronald W. Greenen* (of *Greenen & Greenen PLLC*), for appellant.

*Anthony F. Golik, Prosecuting Attorney*, and *E. Bronson Potter, Deputy*, for respondent.

¶1 QUINN-BRINTNALL, J. — Clark County Superior Court granted Clark County's motion for summary judgment in the present wrongful death tort suit because the appellant, M. Gwyn Myles, failed to notify the clerk of the Clark County Board of Commissioners of her intent to bring a tort

action against Clark County as required by ch. 4.96 RCW and Clark County Code 2.95.060. Myles appeals, arguing that the notice provisions of ch. 4.96 RCW are unconstitutional or, in the alternative, that 2009 amendments to former RCW 4.96.020 (2006) allowing for "substantial compliance" with the notice provisions should be applied retroactively. Although the notice provisions of ch. 4.96 RCW are constitutional and may not be applied retroactively, we reverse the trial court's summary dismissal of Myles's claim for failure to satisfy the notice provisions of the preclaim filing statutes because the *precipitating event* for the trial court's application of the statutes, Clark County's October 30, 2009 dismissal request, occurred three months *after* the effective date of the statutory amendments allowing for substantial, rather than strict, compliance.

## FACTS

¶2 On the evening of January 27, 2006, Carlos Villanueva-Villa broadsided William Lloyd Myles's car and fled the collision scene. After authorities apprehended Villanueva-Villa, they determined that he had been intoxicated at the time of the accident. William[1] was pronounced dead at the scene. On May 15, 2006, Villanueva-Villa pleaded guilty to one count of vehicular homicide and one count of hit and run involving death. RCW 46.61.520(1)(a); RCW 46.52.020(4)(a). On June 8, 2006, Villanueva-Villa also pleaded guilty to two outstanding driving while under the influence charges, from November 26 and December 23, 2005.

¶3 On October 27, 2008, William's widow, Myles, sent a damage claim for $5.9 million to the Risk Management Division of Clark County. The claim asserted that the Clark County Sheriff's Office and the Clark County Jail negligently caused William's death by failing to "create jail standards of operation that provide for the public's health

---

[1] For clarity, we refer to William Lloyd Myles by his first name and the appellant, M. Gwyn Myles, as "Myles."

and safety." Clerk's Papers (CP) at 109. Specifically, Myles alleged that after stopping Villanueva-Villa for a second driving while under the influence offense on December 23, 2005, law enforcement released him because the Clark County Jail was full at the time of the incident and officials at the jail would not confirm his outstanding warrant for the first driving under the influence charge.

¶4 On October 31, Clark County Risk Management Services Risk Manager Mark Wilsdon replied to Myles's claim. Wilsdon denied the claim "for both liability and indemnity." CP at 116. Five days later, Clark County Risk Management Division sent an unsigned, auto-generated letter to Myles stating that it had received her tort claim notice and that the initial claim evaluation could take as "many as 60 days or more." CP at 117. Myles made no attempt to clarify the discrepancy between the two letters and, on January 20, 2009, filed the present tort suit in Clark County Superior Court. Clark County filed its answer to the suit on May 8. In its answer, Clark County affirmatively raised the defense that Myles "failed to properly file a claim against the [county] as required by Chapter 4.96 RCW."[2] CP at 178.

¶5 At the time Myles filed her claim, former RCW 4.96-.020(4) stated,

No action shall be commenced against any local governmental entity, or against any local governmental entity's officers, employees, or volunteers, acting in such capacity, for damages arising out of tortious conduct until sixty days have elapsed after the claim has first been presented to and filed with the governing body thereof. The applicable period of limitations within which an action must be commenced shall be tolled during the sixty-day period.

---

[2] By this point, the statute of limitations had run, barring Myles from perfecting notice as required by ch. 4.96 RCW. Without accounting for the tolling procedures of the tort claim filing statutes, the statute of limitations on the claim would have run three years after William's death: January 27, 2009. With tolling, the statute of limitations would have run 60 days later, on March 28. The record provides no indication as to why Clark County did not respond to the complaint within the 20 days specified by CR 4(a)(2).

¶6 On October 30, 2009, Clark County moved for summary judgment, arguing that "[t]he proper filing of a claim for damages is a 'condition precedent to the commencement of any action claiming damages' against a county. RCW 4.96-.010(1)." CP at 28. In its supporting memorandum, Clark County noted that in 1987, the Clark County Board of County Commissioners (Board) codified section 2.95.060 of the Clark County Code to " 'provide procedures for dealing with claims and lawsuits for alleged [tortious] conduct involving the county' " consistent with ch. 4.96 RCW. CP at 29. Subsection 2.95.060(A) provides that tort claims "shall be filed with the Clerk of the Board and Summons and Complaint served upon the auditor." CP at 29. Clark County also noted that on July 8, 2003, consistent with legislative amendments to the tort claim filing statutes, the Board adopted Resolution 2003-07-05 appointing its clerk, Louise Richards, as the agent to receive claims for damages against Clark County.

¶7 Because Myles filed her claim with the Risk Management Division of Clark County, not with Richards, Clark County asserted that it was improperly notified of her impending litigation and that as a result of the deficient notice, the Clark County Superior Court was "without jurisdiction and dismissal is the only remedy." CP at 28.

¶8 On August 10, 2010, the superior court granted Clark County summary judgment on jurisdictional grounds, ruling in a written opinion that "courts have permitted substantial compliance as to the contents of the tort claim but strict compliance as to the service and procedures of the tort claim." CP at 129. The superior court also ruled that legislative amendments to former RCW 4.96.020 allowing for "substantial compliance" with the tort claim filing statutes (rather than the "strict compliance" previously required by legal precedent) did not apply retroactively,[3] that Clark County did not waive the affirmative defense of Myles's failure to comply with the claim filing procedures,

---

[3] The effective date of the amendments allowing for substantial compliance was July 26, 2009.

and that Clark County was not equitably estopped from asserting the improper claim filing defense. On January 6, 2011, the superior court ruled in a second written opinion that the notice provisions of ch. 4.96 RCW are constitutional.

¶9 Last, on February 17, the superior court ruled "that there are no genuine issues of material fact and dismissal of the claims against Clark County are warranted as a matter of law" and dismissed the remaining claims with prejudice. CP at 158. Myles timely appeals.

## ANALYSIS

STANDARD OF REVIEW

¶10 When reviewing an appeal from a summary judgment, we engage in the same inquiry as the trial court. *Marincovich v. Tarabochia*, 114 Wn.2d 271, 274, 787 P.2d 562 (1990). We determine whether there are genuine issues of material fact undecided and whether the moving party is entitled to judgment as a matter of law. *Marincovich*, 114 Wn.2d at 274. Here, no material facts are in dispute, and we must decide de novo pure questions of law concerning the constitutionality and interpretation of ch. 4.96 RCW and the 2009 amendments to it.

SEPARATION OF POWERS

¶11 Myles contends that the trial court erred in granting Clark County summary judgment because the claim filing requirements of former RCW 4.96.020 unconstitutionally violate the separation of powers doctrine. Specifically, Myles argues that the 60-day notice requirement under former RCW 4.96.020(4)[4] directly conflicts with the requirements for commencing a civil suit governed by

---

[4] The current version of RCW 4.96.020(4) still calls for plaintiffs to notify local governments 60 days before commencing suit. The 2009 amendments, discussed more fully below, added a fifth subsection, which allows for substantial compliance with the substantive *and* procedural requirements of ch. 4.96 RCW.

CR 3(a). Because Wash. Const. art. II, § 26 empowers the legislature to determine the manner in which suits may be brought against the State, and because the presuit claim filing requirements of ch. 4.96 RCW derive from an appropriate and lawful exercise of legislative authority to conditionally waive sovereign immunity, we agree with Clark County and hold that the notice provisions of former RCW 4.96.020(4) are constitutional.

¶12 Although Myles urges this court to engage in a separation of powers analysis to settle an apparent conflict between a statute and a court rule, this "court is limited in its role in interpreting the constitution [and] has no power to construe or interpret a provision that is clear, plain and unambiguous in its terms." *City of Bellevue v. State*, 92 Wn.2d 717, 723, 600 P.2d 1268 (1979). Moreover, "[c]ourts do not sit to review or revise legislative action, but rather *to enforce the legislative will when acting within its constitutional limits.* A legislative act carries with it the presumption of its constitutionality, and will not be declared void unless its invalidity appears beyond a reasonable doubt." *Robb v. City of Tacoma*, 175 Wash. 580, 586, 28 P.2d 327 (1933) (emphasis added). Here, the Washington Constitution clearly empowers the legislature to determine the manner in which suits may be brought against the State and its municipalities, and the provisions of ch. 4.96 RCW unambiguously derive from this enumerated power.

¶13 Wash. Const. art. II, § 26 provides, "The legislature shall direct by law, *in what manner*, and in what courts, suits may be brought against the state." (Emphasis added.) Former RCW 4.96.020(4) states,

No action subject to the claim filing requirements of this section shall be commenced against any local governmental entity, or against any local governmental entity's officers, employees, or volunteers, acting in such capacity, for damages arising out of tortious conduct until sixty calendar days have

elapsed after the claim has first been presented to the agent of the governing body thereof. The applicable period of limitations within which an action must be commenced shall be tolled during the sixty calendar day period. For the purposes of the applicable period of limitations, an action commenced within five court days after the sixty calendar day period has elapsed is deemed to have been presented on the first day after the sixty calendar day period elapsed.

¶14 Neither art. II, § 26 nor former RCW 4.96.020(4) are ambiguous: acting under constitutional authority, the legislature has determined that in order to bring a tort suit against the State or its municipalities, plaintiffs must first notify the government. This reading of the statute does not encroach upon the judiciary's inherent power to promulgate rules for its practice. *See In re Bruen*, 102 Wash. 472, 476, 172 P. 1152 (1918). After delivering the required notice, plaintiffs may still commence suit as dictated by CR 3(a). *See Waples v. Yi*, 169 Wn.2d 152, 162-63, 234 P.3d 187 (2010) (J.M. Johnson, J., dissenting). Moreover, we note that in addressing concerns over the separation of powers, "[t]he question to be asked is not whether two branches of government engage in coinciding activities, but rather whether the activity of one branch threatens the independence or integrity or *invades the prerogatives of another*." *Zylstra v. Piva*, 85 Wn.2d 743, 750, 539 P.2d 823 (1975) (emphasis added). Art. II, § 26 unambiguously makes it the legislature's prerogative to determine the manner in which State entities may be sued. Accordingly, we hold that the notice provisions of ch. 4.96 RCW are constitutional.

RETROACTIVITY

¶15 Next, Myles contends that the trial court erred in finding that a 2009 amendment to former RCW 4.96.020 allowing "substantial compliance" with the statute's presuit claim filing procedures did not apply retroactively. In Myles's case, however, retroactive application of the 2009 amendments is not at issue. Because the amendments to

former RCW 4.96.020 came into effect on July 26, 2009—amendments concerning the compliance determination necessarily made by a trial court—the trial court erred in summarily dismissing Myles's claim on August 10, 2010 for her failure to comply strictly with the procedural requirements of ch. 4.96 RCW. Accordingly, we reverse the superior court and remand for further proceedings.

¶16 Since the interpretation of a statutory amendment presents only a question of law, our review is de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). We presume that statutory amendments are prospective unless there is a legislative intent to apply the statute retroactively or the amendment is clearly curative or remedial. *Johnson v. Cont'l W., Inc.*, 99 Wn.2d 555, 559, 663 P.2d 482 (1983). An amendment is curative only if it clarifies or technically corrects an ambiguous statute. *State v. Jones*, 110 Wn.2d 74, 82, 750 P.2d 620 (1988); *see Wash. Waste Sys., Inc. v. Clark County*, 115 Wn.2d 74, 78, 794 P.2d 508 (1990); *Overton v. Econ. Assistance Auth.*, 96 Wn.2d 552, 557, 637 P.2d 652 (1981). The amendment must be "clearly curative" for it to be retroactively applied. *Howell v. Spokane & Inland Empire Blood Bank*, 114 Wn.2d 42, 47, 785 P.2d 815 (1990). Nevertheless, we "will not apply a curative amendment retroactively 'if it contravenes a judicial construction of the statute that is clarified or technically corrected because of separation of powers considerations.' " *State v. Ramirez*, 140 Wn. App. 278, 289, 165 P.3d 61 (quoting *1000 Virginia Ltd. P'ship v. Vertecs Corp.*, 158 Wn.2d 566, 584, 146 P.3d 423 (2006)), *review denied*, 163 Wn.2d 1036 (2007).

¶17 The overwhelming judicial construction requiring strict compliance with the procedural requirements of former RCW 4.96.020 prior to the 2009 amendments is made clear in *Medina v. Public Utility District No. 1 of Benton County*, 147 Wn.2d 303, 53 P.3d 993 (2002). There, our Supreme Court began its analysis of former RCW 4.96.020(4) by recognizing the Court of Appeals' long-

standing jurisprudence requiring strict compliance with the procedural aspects of the notice statutes:

> Although this court has not yet addressed the issue, generally the Court of Appeals has required strict compliance with all statutory notice claim provisions except as to the content of a claim. *See, e.g., Sievers v. City of Mountlake Terrace*, 97 Wn. App. 181, 983 P.2d 1127 (1999); *Pirtle v. Spokane Pub. Sch. Dist. No. 81*, 83 Wn. App. 304, 921 P.2d 1084 (1996)[, *review denied*, 131 Wn.2d 1014 (1997)]; *Levy v. State*, 91 Wn. App. 934, 942, 957 P.2d 1272 (1998) (plaintiff failed to strictly comply with filing requirements of RCW 4.92.110 so dismissal was proper); *Kleyer v. Harborview Med. Ctr.*, 76 Wn. App. 542, 547-49, 887 P.2d 468 (1995) (filing claim with university rather than state risk management office is not compliance and requires dismissal); *Lewis v. City of Mercer Island*, 63 Wn. App. 29, 817 P.2d 408 . . . (filing requirements of RCW 4.96.010 are conditions precedent to commencing suit and must be strictly complied with)[, *review denied*, 117 Wn.2d 1024 (1991)]; *Andrews v. State*, 65 Wn. App. 734, 738-39, 829 P.2d 250 (1992) (requirement of RCW 4.92.110 that claim be filed with state risk management office before commencement of suit is a mandatory condition precedent and will be strictly construed).

*Medina*, 147 Wn.2d at 316.

¶18 Thus, whether the legislature intended the 2009 amendments to former RCW 4.96.020 to be remedial or curative is inapposite in Myles's case. Because Washington courts have consistently held that plaintiffs must strictly comply with the procedural aspects of the presuit claim filing statute, applying the 2009 amendments retroactively clearly contravenes judicial construction of the statute and raises separation of powers concerns. *Ramirez*, 140 Wn. App. at 289.

¶19 Here, on July 26, 2009, the legislature added a fifth subsection to former RCW 4.96.020, which reads, "With respect to the content of claims under this section and all procedural requirements in this section, this section must be liberally construed so that substantial compliance will be deemed satisfactory." LAWS OF 2009, ch. 433, § 1; CP at 39.

The House Bill Report generated during deliberation over the statutory amendments stated the position in support of the amendments, in part as follows:

> Injured plaintiff[s'] claims are being denied because of the strict claim filing statutes. The original intent of the statutes was to provide notice so that the government can get the facts of the claim and investigate. They were not meant to be "gotcha" statutes. Some of the procedural requirements are tricky. Cases are being dismissed based on technical interpretations of the statute. The bill is aimed at restoring the original intent. It corrects historical unfairness and makes the statute functional. It requires notice to the government, but eliminates the barnacles of judicial bureaucracy.

H.B. REP. on Engrossed Substitute H.B. 1553, at 3, 61st Leg., Reg. Sess. (Wash. 2009); CP at 87.

¶20 Nevertheless, "[w]hether the legislature intended the statute to apply retroactively does not end the inquiry because it remains to be determined whether the statute was in fact applied retroactively" in this case. *In re Pers. Restraint of Flint*, 174 Wn.2d 539, 546-47, 277 P.3d 657, 277 P.3d 657 (2012). A statute applies "when the *precipitating event* for the application of the statute occurs *after* the effective date of the statute, even though the precipitating event had its origin in a situation existing prior to the enactment of the statute." *Aetna Life Ins. Co. v. Wash. Life & Disability Ins. Guar. Ass'n*, 83 Wn.2d 523, 535, 520 P.2d 162 (1974) (emphasis added).

¶21 Moreover, a statute does not "operate retrospectively just because it upsets expectations based on prior law." *Flint*, 174 Wn.2d at 547. "Expectations based on prior law must be distinguished from vested rights . . . . A statute has retroactive effect if it takes away or impairs a party's vested rights acquired under existing laws." *Flint*, 174 Wn.2d at 547; *see also State v. Pillatos*, 159 Wn.2d 459, 471, 150 P.3d 1130 (2007).

¶22 Here, the legislative amendments requiring *liberal construction* and deeming substantial compliance with ch.

4.96 RCW's presuit claim filing requirements sufficient became effective on July 26, 2009. Clark County did not move for summary judgment until October 30, 2009. Accordingly, although the *origin* of the precipitating event requiring application of the statute—Myles's filing her tort claim on January 20, 2009—occurred before the July 26, 2009 enactment of the statutory amendments directing liberal compliance review for substantial compliance, the trial court's application of the statute occurred *after* the effective date of the amendment, when it granted summary judgment on August 10, 2010. Thus, the trial court was required to apply the legislative amendments and determine whether Myles had substantially (rather than strictly) satisfied the notice provisions of ch. 4.96 RCW.

¶23 Although Clark County may have come to expect it could avoid litigation through operation of the "tricky" provisions of the pretrial notification "gotcha" statutes,[5] this expectation falls well short of being a vested right. As our Supreme Court explained in *Godfrey v. State*, 84 Wn.2d 959, 963, 530 P.2d 630 (1975),

> A vested right, entitled to protection from legislation, must be something more than a *mere expectation* based upon an anticipated continuance of the existing law; *it must have become a title*, legal or equitable, *to the present or future enjoyment of property, a demand, or a legal exemption from a demand by another*.

¶24 By failing to apply the standard in effect at the time it made its determination of Myles's compliance with the notice of claims statute, the trial court incorrectly granted summary judgment to Clark County. Accordingly, we reverse and remand for further proceedings.

ATTORNEY FEES

¶25 Myles requests attorney fees for this appeal and cites to RAP 18.1 in support of this request. However, RAP

---

[5] *See* H.B. REP. on Engrossed Substitute H.B. 1553.

18.1(a) states that attorney fees shall be awarded on appeal only *if* "applicable law grants to a party the right to recover reasonable attorney fees." And Myles has not indicated any applicable law allowing for attorney fees in this appeal. Accordingly, we deny her request for attorney fees in this appeal. RAP 10.3(a)(6).

WORSWICK, C.J., and HUNT, J., concur.

Review denied at 176 Wn.2d 1015 (2013).