IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | |
|---|---|
| SHANE FAST, JAMIE FAST, the marital community comprised thereof, ROBERT DALTON FAST, and the estate thereof, <br><br> Appellants, <br><br> v. <br><br> KENNEWICK PUBLIC HOSPITAL DISTRICT d/b/a KENNEWICK GENERAL HOSPITAL and d/b/a MID-COLUMBIA WOMEN'S HEALTH CENTER, a Washington public hospital district organized as a government entity, municipal or quasi-municipal corporation; ADAM T. SMITH, D.O., individually and for the marital community with spouse or registered domestic partner Jane Doe Smith; GREGORY SCHROFF, M.D., individually and for the marital community with spouse or registered domestic partner Jane Doe Smith; and DOES 1 through 50, <br><br> Respondents. | No. 31509-6-III <br><br><br><br><br><br><br><br> PUBLISHED OPINION |

SIDDOWAY, C.J. — The Benton County Superior Court granted summary

judgment dismissing Shane and Jamie Fast's action seeking to recover damages for

personal injury to Ms. Fast and the wrongful death of the couple's viable unborn son,

1

Robert, which they attribute to the professional negligence of Dr. Adam Smith, Dr. Gregory Schroff, and the doctors' employer, the Kennewick Public Hospital District. The Fasts had proceeded with their lawsuit as if the claims for Robert's death and Ms. Fast's personal injury were both subject to the statute of limitations for injuries resulting from health care, RCW 4.16.350, which could be tolled for a year by a good faith request for mediation. On that basis—having served such a request—they filed suit more than three years after Robert's death.

The trial court concluded that the health care statute of limitations does not apply to a wrongful death claim, with the result that the running of the statute of limitations on that claim was not tolled. It also concluded that the Fasts had failed to comply with the statutory requirement to file a claim for damages with a local government entity (here, the hospital district) before commencing litigation against the entity or its employees, and on that basis dismissed the Fasts' claims based on Ms. Fast's injuries as well.

Division Two of this court held in 1990 that the limitations statute applicable to a wrongful death action is the general tort limitations statute, RCW 4.16.080(2), rather than the health care limitations statute. *Wills v. Kirkpatrick*, 56 Wn. App. 757, 785 P.2d 834 (1990). The Fasts' efforts to distinguish their claims from those in *Wills* or to convince this division to reject Division Two's analysis are unpersuasive.

We agree with the Fasts, however, that the defendants are not eligible to assert the defense of the Fasts' failure to present a prefiling notice of claim under RCW 4.96.010

2

and RCW 4.96.020(4) in light of the hospital's failure to comply with its own obligations under that section.

We affirm the dismissal of the Fasts' claim for the wrongful death of Robert, reverse the dismissal of the Fasts' claims for Ms. Fast's injuries, and remand for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL BACKGROUND

Jamie and Shane Fast's unborn son Robert (gestational age 28-weeks) died in utero in August 2008. The Fasts attribute his death to the failure of health care providers to timely recognize and act upon the risk that Ms. Fast would develop gestational diabetes.

Almost three years after Robert's death, the Fasts, individually and on behalf of Robert, served a written good faith request for mediation on Dr. Adam Smith, Dr. Gregory Schroff, and the hospital that employed them, the Kennewick Public Hospital District. Under chapter 7.70 RCW, entitled "Actions for Injuries Resulting from Health Care," the filing of a good faith request for mediation tolls the health care statute of limitations, RCW 4.16.350, for one year. RCW 7.70.110.

The defendants expressed no interest in mediating and eventually, on July 18, 2012, the Fasts commenced legal action against Dr. Smith, Dr. Schroff, and the hospital by filing a complaint. The Fasts characterized the action as one "for injuries resulting from healthcare under RCW Chapter 7.70," Clerk's Papers (CP) at 2

3

(Complaint, ¶ 1.2), but they also sought to recover "for injury or death of a child . . . brought pursuant to the laws of the State of Washington to include . . . RCW 4.24.010." CP at 7-8 (Complaint, ¶ 5.1). On the same day they filed the complaint, the Fasts filed with the court a completed form, entitled "Standard Tort Claim Form," that had been promulgated by Washington State for use in filing notices of claim against the state with the department of enterprise services in Olympia. In a "supplemental response" section of the form, the Fasts' lawyer stated, "This Standard Tort Form is not required for this cause. The Claimants, however, offer this Standard Tort Form as a courtesy and convenience to Respondent." CP at 281. A copy of the standard tort claim form was not served on the hospital until August 1; copies were mailed to lawyers for Dr. Smith and Dr. Schroff, who accepted service for their clients on August 3 and September 12, respectively.

Several months later, the three defendants moved for summary judgment dismissal of the complaint on grounds that the Fasts failed to comply with the local government tort claim statute, RCW 4.96.020, which requires that claimants give 60-days' notice before filing suit against a local governmental entity. Alternatively, they argued that the wrongful death claim was barred by the statute of limitations.

In resisting summary judgment, the Fasts initially argued that they were not asserting a "wrongful death" claim because they were not relying on the right of action created by chapter 4.20 RCW, which creates a statutory right of recovery for "the death

4

of a person . . . caused by the wrongful act, neglect, or default of another." RCW 4.20.010. They challenged the defendants' right to raise the Fasts' failure to present a prefiling notice of claim as a defense, presenting evidence that the hospital had not made available the form or instructions on how to present it as required by RCW 4.96.020(3)(c). Alternatively, they argued that they had substantially complied with chapter 4.96 RCW.

In supplemental briefing, the Fasts affirmed that they asserted the statutory claim for the wrongful death of a child provided by RCW 4.24.010 but argued that following the enactment of chapter 7.70 RCW and the related health care statute of limitations at RCW 4.16.350 in 1976, a statutory claim for the death of a child falls within the ambit of a "civil action for damages for injury occurring as a result of health care." They argued that it is subject to the health care limitations period, which had been tolled for a year by their service of a good faith request for mediation. They also challenged the constitutionality of the prefiling notice of claim requirement imposed by chapter 4.96 RCW.

The trial court eventually granted summary judgment on both grounds urged by the defendants. The Fasts appeal.

## ANALYSIS

The Fasts identify four issues raised by the trial court's asserted error in dismissing their complaint summarily: first, that the trial court applied the wrong

5

limitations statute to their claim for damages for Robert's death; <u>second</u>, that the trial court erred in granting summary judgment based on the tort claim defense where the defendants were not entitled to raise it; <u>third</u>, that if the tort claim defense was available to the defendants, the Fasts demonstrated substantial compliance with the statutory notice requirement; and <u>fourth</u>, that the requirement of the tort claim notice is unconstitutional, facially or as applied to this case.

We review summary judgment orders de novo, performing the same inquiry as the trial court. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 860-61, 93 P.3d 108 (2004). We view "the facts and the inferences from the facts in a light most favorable to the nonmoving party." *Jones v. Allstate Ins. Co.*, 146 Wn.2d 291, 300, 45 P.3d 1068 (2002). Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).

Here, it is undisputed that Robert's death occurred on August 31, 2008, and the Fasts did not commence this action until July 18, 2012, more than three years later. It is also undisputed that on August 26, 2011, the Fasts delivered a good faith request for mediation to each of the defendants.[1] Whether the time for bringing suit under RCW 4.24.010 is governed by RCW 4.16.080(2) or RCW 4.16.350 presents a question of statutory construction, as does the issue of whether a local government entity that has

---

[1] The defendants do not concede that the mediation request was sufficient under RCW 7.70.110, and reserve the right to contest its validity.

6

failed to make a tort claim form and instructions available under RCW 4.96.020 may

assert the defense of failure to present such a form before commencing legal action.

Issues of statutory construction are questions of law reviewed de novo. *Myles v. Clark

County*, 170 Wn. App. 521, 527, 289 P.3d 650 (2012).

We find the first and second questions of law to be dispositive of the appeal and

address them in turn.

> *I.    RCW 4.16.080(2) is the limitations statute that applies
> to actions for death of a child under RCW 4.24.010.*

"[A]t common law, no civil action could be maintained for damages resulting

from the death of a human being." *Hedrick v. Ilwaco Ry. & Nav. Co.*, 4 Wash. 400, 402,

30 P. 714 (1892), *overruled in part by Lockhart v. Besel*, 71 Wn.2d 112, 426 P.2d 605

(1967). That "defect" in the common law was addressed in the states, as it was in

England, by statutes providing a remedy that inures to the benefit of relatives of the

deceased designated by the statute. *Id.* at 402-03

By statute, Washington recognized the right of a parent to recover for the injury or

death of a child before statehood. *See* LAWS OF 1869, § 9, at 4; presently *codified as*

RCW 4.24.010. The action has repeatedly been characterized by Washington cases as an

action for "wrongful death." *E.g.*, *Lockhart v. Besel*, 71 Wn.2d 112, 116, 426 P.2d 605

(1967); *Clark v. Icicle Irr. Dist.*, 72 Wn.2d 201, 205-06, 432 P.2d 541 (1967); 16 DAVID

K. DEWOLF, WASHINGTON PRACTICE: TORT LAW AND PRACTICE § 7:3 (4th ed. 2013)

7

(characterizing RCW 4.24.010 as one of "five statutes in Washington that govern wrongful death actions"). "It is not a survival action pursuing the 'surviving' rights of the decedent child, but is a separate, independent action brought by [a] father on his own behalf for recovery of his own personal loss—the anguish and sorrow experienced by a parent who suffers the wrongful death of a child." *Moen v. Hanson*, 85 Wn.2d 597, 598-99, 537 P.2d 266 (1975) (action by father for death of a child whom his wife was due to deliver in 30 days; both mother and child were killed as the result of an automobile accident).

Unlike most states, Washington's wrongful death statutes do not contain an express statute of limitation. *White v. Johns-Manville Corp.*, 103 Wn.2d 344, 348, 693 P.2d 687 (1985) (citing S. SPEISER, RECOVERY FOR WRONGFUL DEATH § 11:8 (2d ed. 1975)). Instead, actions for wrongful death have long been held to be subject to the three-year limitations period provided by RCW 4.16.080(2) for "injury to the person or rights of another, not hereinafter enumerated." *Atchison v. Great W. Malting Co.*, 161 Wn.2d 372, 377, 166 P.3d 662 (2007) ("The statute of limitations for a wrongful death action in Washington is three years.") (citing RCW 4.16.080(2); *Beal v. City of Seattle*, 134 Wn.2d 769, 776, 954 P.2d 237 (1998); *Bader v. State*, 43 Wn. App. 223, 227, 716 P.2d 925 (1986); *Dodson v. Cont'l Can Co.*, 159 Wash. 589, 294 P. 265 (1930)). Like the statute creating an action for death of a child, the statute prescribing the limitations period generally applicable to torts predates statehood. *See* LAWS OF 1854, § 4, at 363.

8

A wrongful death action accrues, and the time for filing begins, at the time of death. *Atchison*, 161 Wn.2d at 378-79.

The Fasts' position is that with enactment in 1976 of Substitute H.B. 1470, entitled "Civil Recompense and Claims—Medical Malpractice," Laws of 1976, ch. 56, the limitations period that applied to the statutory action for the death of a child changed, if the cause of the child's death was medical malpractice. They point to language in the bill that the legislature was "modify[ing] . . . certain substantive and procedural aspects of all civil actions and causes of action, whether based on tort, contract, or otherwise, for damages for injury occurring as a result of health care" provided after the effective date of the act. RCW 4.16.350 was amended to include parallel language, stating that it prescribes the limitations period for any civil action for damages "for injury occurring as a result of health care." LAWS OF 1976, ch. 56, §§ 1, 6. The Fasts argue that "injury" should be interpreted as having a broad meaning—a meaning broad enough to include the loss of a child.

The same argument about the breadth of "injury" in the two health care statutes was presented and rejected 25 years ago by Division II of our court in *Wills, supra*. In that case, the personal representative of Cheri Skye's estate filed an action for wrongful death against Ms. Skye's physician, alleging that he had been negligent in treating her. *Id.* at 758. The trial court was persuaded to apply the health care statute of limitations, RCW 4.16.350, and measured the three-year limitation period from the date of Ms.

Skye's last visit with the physician. *Id.* at 759. Because the last visit occurred more than three years before the personal representative filed the complaint, the trial court dismissed the action on the grounds that it was time barred. *Id.*

On appeal, the *Wills* court identified the issue before it as "whether the medical malpractice statute of limitations, RCW 4.16.350, which measures the period from the act or omission causing the injury, embraces a wrongful death claim based on medical malpractice." *Id.* at 760. In the court's view, the issue of statutory construction came down to "whether 'damages for injury' should be interpreted broadly to apply to injury to statutory beneficiaries in a wrongful death claim or should be limited to injury suffered by the patient." *Id.* at 761.

The court first observed that the new chapter 7.70 RCW created by the 1976 legislation "is primarily concerned with various aspects of claims involving personal injuries of the patient," and that "[t]here is nothing to suggest that the limitation of actions for medical malpractice embraces a claim for wrongful death." *Id.* at 762. It next reasoned that the statute of limitations for wrongful death actions must apply, because otherwise "we would have the situation where such a claim could be barred even before death triggers accrual of the right to bring the action." *Id.* The court concluded, "Such a result seems to us illogical and unjust." *Id.*

Finally, the court noted that "[i]f the Legislature had intended to include wrongful death claims within these limited periods it could have done so by so limiting such

10

actions for damages for injury, *or death*, as a result of health care." *Id.* at 763. Because it had not done so, the court concluded "that the three-year limitation period of RCW 4.16.080(2), measured from the date of death, applies to this claim for wrongful death based on the alleged medical malpractice of Dr. Kirkpatrick." *Id.*

While the Fasts ask us to reject the reasoning of Division Two in *Wills*, we find it to be sound. A wrongful death claim, whether under RCW 4.20.010, the wrongful death provision applicable in *Wills* or RCW 4.24.010, the provision that applies here, is not one to recover for physical injury to a plaintiff but to recover for a different type of loss. While it is true that "injury" can have a broader meaning of "harm" or "damage," it is noteworthy that RCW 4.16.350 and RCW 7.70.010 both speak of "civil actions . . . for *damages* for *injury* occurring as a result of health care." RCW 7.70.010 (emphasis added). The broad concept of injury is captured by the word "damages," leaving the word "injury" to describe the particular type of damage—injury suffered by the patient— to which the provisions apply. To read the term "injury" more broadly, extending the scope of the health care statutes to "damages for *damage or harm* occurring as a result of health care" could capture, e.g., a tortious interference claim between health care providers. We agree with Division Two's interpretation of the 1976 legislation as more narrowly focused.

Equally if not more importantly, *Wills* has answered the question of which statute of limitations applies to actions for a wrongful death caused by medical malpractice for a

11

quarter century. While the Fasts argue that the *Wills* court's interpretation of the statutes contravened legislative intent, the legislature has never acted to alter the result in *Wills* even though it has amended either RCW 4.16.350 or RCW 7.70.010 on four separate occasions since 1990. *See* LAWS OF 2006, ch. 8, § 302 and LAWS OF 2011, ch. 336, § 88 (amending RCW 4.16.350); LAWS OF 1993, ch. 492, § 420 and LAWS OF 1996, ch. 270, § 1 (amending RCW 7.70.010). At some point legislative acquiescence in a judicial interpretation of a statute is assumed. *City of Federal Way v. Koenig*, 167 Wn.2d 341, 352, 217 P.3d 1172 (2009) (Korsmo, J. Pro Tem., concurring).

The trial court correctly applied the general tort statute of limitations to the Fasts' claim under RCW 4.24.010.

II.     *A local government entity that fails to comply with RCW 4.96.020(3)*
        *is precluded from raising a defense of nonpresentment of a prefiling*
        *notice of claim.*

The trial court dismissed the claim for damages for injury suffered by Ms. Fast based on the failure of the Fasts to present a tort claim to the hospital, a local government entity, at least 60 days before filing suit.

In chapter 4.96 RCW, the legislature has waived the sovereign immunity of local government entities and their officers, employees or volunteers, but it has required that "[f]iling a claim for damages within the time allowed by law shall be a condition precedent to the commencement of any action claiming damages." After the tort claim is presented to the entity, the plaintiff must wait until 60 days have elapsed before

12

commencing a lawsuit against the government entity. RCW 4.96.020(4). "The purpose of this claim is 'to allow government entities time to investigate, evaluate, and settle claims' before they are sued." *Renner v. City of Marysville*, 168 Wn.2d 540, 545, 230 P.3d 569 (2010) (quoting *Medina v. Pub. Util. Dist. No. 1 of Benton County*, 147 Wn.2d 303, 310, 53 P.3d 993 (2002)).

The parties do not dispute that the hospital is a local governmental entity and that chapter 4.96 RCW applies. It is also undisputed that the Fasts failed to present a tort claim form to the hospital before bringing suit. The standard tort claim form document that the Fasts did file with the superior court was served on the defendants after the lawsuit was commenced. The Fasts argue, however, that the hospital is not eligible to assert a defense under chapter 4.96 RCW because of its own failure to comply with a statutory requirement that it make available both a tort claim form and instructions on how the form is to be presented. At issue are changes made to chapter 4.96 RCW in 2009.

Under the 2009 changes, claims for damages must be presented on the standard tort claim form that is maintained by the risk management division of the Washington State office of financial management, except for local government entities who elect to prepare a claim form of their own, in which case the local form may be used. RCW 4.96.020(3). In addition,

13

Local governmental entities shall make available the standard tort claim form described in this section with instructions on how the form is to be presented and the name, address, and business hours of the agent of the local governmental entity.

RCW 4.96.020(3)(c). RCW 4.96.020(2) provides that "[t]he failure of a local governmental entity to comply with the requirements of this section precludes that local governmental entity from raising a defense under this chapter."

In opposing summary judgment, the Fasts presented the declaration of their lawyer stating he had been unable to locate a tort claim form or instructions on the hospital's website, and that he had placed a phone call to the hospital inquiring about a tort claim form and was unable to obtain any information—this, despite his call having been transferred to three different employees. They presented the declaration of a private investigator who had traveled to the hospital and questioned hospital employees about obtaining a form or instructions; he was not provided with any form or information other than the suggestion that he contact an attorney of his own choice. Finally, they presented the deposition testimony of the hospital's designated agent conceding that she was aware that there was a new statutory requirement to provide a form and instructions but that the hospital was not yet in compliance.

The defendants argue that "[t]he fact that [the hospital] does not have the form on

its website does not bar it from raising the defense." Br. of Resp't at 25.[2] But while the Fasts' lawyer testified that the hospital's website was one place he looked for the form, the Fasts do not argue that the form had to be available on the hospital's website. They argue, consistent with the plain language of RCW 4.96.020(3)(c), that the hospital was required to "make available the standard tort claim form . . . with instructions on how the form is to be presented and the name, address, and business hours of the agent of the local governmental entity."

Alternatively, the defendants argue that "[i]t is apparent from the context of the statute that this bar [on raising failure to file a claim form as a defense] relates solely to the failure to designate an agent for service." *Id.* at 26. We do not find this to be apparent at all.

Here again, our interpretation of a statutory amendment presents a question of law, as to which review is de novo. *Myles*, 170 Wn. App. at 530. Our fundamental objective in interpreting a statute is to ascertain and carry out the legislature's intent. *Arborwood Idaho, LLC v. City of Kennewick*, 151 Wn.2d 359, 367, 89 P.3d 217 (2004). If the

---

[2] In a memorandum decision by the trial court, it found that the hospital complied with the requirements of RCW 4.96.020(3) because "there was a standard form available on line"—presumably referring to the standard tort claim form made available for claims against Washington State addressed to the state department of enterprise services in Olympia. CP at 1235. The defendants do not advance this argument on appeal and understandably so; the fact that the State has made the form available does not satisfy the hospital's direct responsibility under RCW 4.96.020(3) to make the form and instructions available itself.

15

statute's meaning is plain on its face, we must give effect to that plain meaning as an expression of legislative intent. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). Only if a statute remains ambiguous after a plain meaning analysis may we resort to external sources or interpretive aids, such as canons of construction, case law, or legislative history. *Jongeward v. BNSF Ry. Co.*, 174 Wn.2d 586, 600, 278 P.3d 157 (2012); *State ex rel. Citizens Against Tolls v. Murphy*, 151 Wn.2d 226, 242-43, 88 P.3d 375 (2004).

"Section," "chapter," "title," and "subsection" are surely among the words whose meaning in our revised code is most plain. In 1951, the Washington legislature enacted and designated a "Revised Code of Washington." LAWS OF 1951, ch. 5, § 2, *codified as* RCW 1.04.010. It adopted a numbering system at the same time and provided for it to be followed as new chapters or sections were added as a result of laws thereafter enacted. "Sections" are numbered according to the plan generally used in the 1950 supplement, using the number of the title, the number of the chapter, and a section part of the number (*e.g.*, .020), which is initially made up of three digits and constitutes a true decimal. RCW 1.04.014; RCW Titles Preface.

The entire text of chapter 4.96 RCW is included in an appendix to this opinion. Use of the terms "this section," "this chapter," and "this subsection," as well as reference to particular subsections, are highlighted. Setting aside for a moment the use of "this

16

section" in RCW 4.96.020(2), the use of those words in the chapter is consistent in every case with their meaning provided by chapter 1.04 RCW.

For example, the use of "this section" in RCW 4.96.020(1) and RCW 4.96.020(5) must refer to all of RCW 4.96.020 because the only substantive import of those subsections is to describe the scope and construction of other subsections.

As a further example, RCW 4.96.020(3) speaks of "(c) of this subsection," thereby designating itself as a subsection, not a section. Similarly, RCW 4.96.041(4) speaks of "subsection (1) of this section," thereby designating RCW 4.96.041 as a section and RCW 4.96.041(1) as a subsection.

RCW 4.96.020(4) speaks of actions "subject to the claim filing requirements of this section" but itself includes no claim filing requirements, hence "this section" necessarily refers to RCW 4.96.020.

It is true that if we ignored chapter 1.04 RCW and the other uses of "section" and "subsection" in chapter 4.96 and other chapters of our revised code, then we could read "this section" as used in RCW 4.96.020(2) to mean .020(2) of the chapter without the provision becoming incoherent. But we do not ignore how the words are used elsewhere in the chapter and the revised code. The plain meaning of a statute "is discerned from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." *Campbell & Gwinn*, 146 Wn.2d at 11.

17

The defendants make two other arguments as to why this plain meaning of "this section" cannot be correct. They first point to *Mavis v. King County Public Hospital No. 2*, 159 Wn. App. 639, 648-49, 248 P.3d 558 (2011), the only decision to address the meaning of RCW 4.96.020(2), which they argue describes subsection (2) as creating only two requirements: to appoint an agent, and to record his or her identity with the county auditor. While it is true that subsection (2) of RCW 4.96.020 imposes only those two requirements, it is beside the point, since the requirement to make a form and instructions available is imposed by subsection (3) of RCW 4.96.020 (which was enacted after the presentation of the claim that was at issue in *Mavis*). What is important is that in addition to including two requirements of its own, subsection (2) also provides that a local government entity's failure to comply with the requirements of the *section* prevents it from raising a defense under the chapter. This is recognized by language in *Mavis* that directly undercuts the hospital's argument—*Mavis* states that "[l]ocal government entities must strictly comply with *RCW 4.96.020* in order to raise a defense under the statute." *Id.* at 646 (citing RCW 4.96.020(2)) (emphasis added).

The defendants' second argument points to the fact that subparagraph (c) of RCW 4.96.020(3) permits a local government entity to prepare its own tort claim form and subparagraph (d) of the subsection provides that if the local government's form fails to require the information provided in section RCW 4.96.020 or misidentifies the agent with whom the form is to be filed, then the local government is deemed to have waived any

defense arising from the forgone information or a misguided filing. From this, the hospital argues that subparagraph (d) must provide the exclusive remedy for a failure to comply with subsection RCW 4.96.020(3).

This argument, too, is unpersuasive. What RCW 4.96.020(3)(c) does is permit local governments to create their own forms requiring less information than that provided by the standard form maintained by the risk management division of the office of financial management—in other words, it *permits* them to "fail[ ] to require the information specified in this section": it permits them to fail to provide the information specified in RCW 4.96.020(3)(a). *See* the introductory language of RCW 4.96.020(3) ("all claims for damage[ ] must be presented on the standard tort claim form . . . *except as allowed under (c) of this subsection*" (emphasis added)). For that "failure" only—a *permitted* failure—the local government is not entirely denied a defense under the chapter but is only held to the deficiencies of its form.

To read the section as the hospital does would lead to an absurd result: if the local government prepared a form falling short of the contents of the standard form and made it available with instructions, then a claimant completing the local government's form could pursue her claim and the local government would be held to the deficiencies of its form. But if the government even more egregiously failed to make available *any* form or instructions, then it could raise a defense that would bar a cause of action by a claimant whose ability to file a form was hampered by its violation of the statute. Statutes are

construed in a manner that avoids unlikely, absurd or strained consequences. *Kilian v. Atkinson*, 147 Wn.2d 16, 21, 50 P.3d 638 (2002).

Given our conclusion that the hospital is not eligible to raise the defense of the Fasts' failure to present a prefiling notice of claim, we need not reach their arguments that they substantially complied with the requirements of chapter 4.96 RCW or that the prefiling notice of claim requirement is unconstitutional.

### III.  Attorney fees

The Fasts request attorney fees and costs incurred on appeal under RAP 18.1. The rule provides for attorney fees "[i]f applicable law grants to a party the right to recover reasonable attorney fees or expenses on review." The Fasts do not identify applicable law under which they would be entitled to such an award. "Merely citing to RAP 18.1 is insufficient for an award of fees." *Faulkner v. Racquetwood Vill. Condo. Ass'n*, 106 Wn. App. 483, 487, 23 P.3d 1135 (2001). Their request for fees is denied.

We affirm dismissal of the Fasts' claim under RCW 4.24.010, reverse the trial

20

No. 31509-6-III
*Fast v. Kennewick Pub. Hosp. Dist.*

court's dismissal of their claim for Ms. Fast's injuries, and remand for further

proceedings consistent with this opinion.

_____
Siddoway, C.J.

WE CONCUR:

_____
Brown, J.

_____
Fearing, J.

APPENDIX

**4.96.010**
**Tortious conduct of local governmental entities — Liability for damages.**

(1) All local governmental entities, whether acting in a governmental or proprietary capacity, shall be liable for damages arising out of their tortious conduct, or the tortious conduct of their past or present officers, employees, or volunteers while performing or in good faith purporting to perform their official duties, to the same extent as if they were a private person or corporation. Filing a claim for damages within the time allowed by law shall be a condition precedent to the commencement of any action claiming damages. The laws specifying the content for such claims shall be liberally construed so that substantial compliance therewith will be deemed satisfactory.

(2) Unless the context clearly requires otherwise, for the purposes of this chapter, "local governmental entity" means a county, city, town, special district, municipal corporation as defined in RCW 39.50.010, quasi-municipal corporation, any joint municipal utility services authority, any entity created by public agencies under RCW 39.34.030, or public hospital.

(3) For the purposes of this chapter, "volunteer" is defined according to RCW 51.12.035.

**4.96.020**
**Tortious conduct of local governmental entities and their agents — Claims — Presentment and filing — Contents.**

(1) The provisions of **this section** apply to claims for damages against all local governmental entities and their officers, employees, or volunteers, acting in such capacity.

(2) The governing body of each local governmental entity shall appoint an agent to receive any claim for damages made under this chapter. The identity of the agent and the address where he or she may be reached during the normal business hours of the local governmental entity are public records and shall be recorded with the auditor of the county in which the entity is located. All claims for damages against a local governmental entity, or against any local governmental entity's officers, employees, or

22

volunteers, acting in such capacity, shall be presented to the agent within the applicable period of limitations within which an action must be commenced. A claim is deemed presented when the claim form is delivered in person or is received by the agent by regular mail, registered mail, or certified mail, with return receipt requested, to the agent or other person designated to accept delivery at the agent's office. The failure of a local governmental entity to comply with the requirements of **this section** precludes that local governmental entity from raising a defense under **this chapter**.

(3) For claims for damages presented after July 26, 2009, all claims for damages must be presented on the standard tort claim form that is maintained by the risk management division of the office of financial management, except as allowed under (c) of **this subsection**. The standard tort claim form must be posted on the office of financial management's web site.

(a) The standard tort claim form must, at a minimum, require the following information:

(i) The claimant's name, date of birth, and contact information;

(ii) A description of the conduct and the circumstances that brought about the injury or damage;

(iii) A description of the injury or damage;

(iv) A statement of the time and place that the injury or damage occurred;

(v) A listing of the names of all persons involved and contact information, if known;

(vi) A statement of the amount of damages claimed; and

(vii) A statement of the actual residence of the claimant at the time of presenting the claim and at the time the claim arose.

(b) The standard tort claim form must be signed either:

(i) By the claimant, verifying the claim;

(ii) Pursuant to a written power of attorney, by the attorney in fact for the claimant;

(iii) By an attorney admitted to practice in Washington state on the claimant's behalf; or
(iv) By a court-approved guardian or guardian ad litem on behalf of the claimant.

23

(c) Local governmental entities shall make available the standard tort claim form described in **this section** with instructions on how the form is to be presented and the name, address, and business hours of the agent of the local governmental entity. If a local governmental entity chooses to also make available its own tort claim form in lieu of the standard tort claim form, the form:

(i) May require additional information beyond what is specified under **this section**, but the local governmental entity may not deny a claim because of the claimant's failure to provide that additional information;

(ii) Must not require the claimant's social security number; and

(iii) Must include instructions on how the form is to be presented and the name, address, and business hours of the agent of the local governmental entity appointed to receive the claim.

(d) If any claim form provided by the local governmental entity fails to require the information specified in **this section**, or incorrectly lists the agent with whom the claim is to be filed, the local governmental entity is deemed to have waived any defense related to the failure to provide that specific information or to present the claim to the proper designated agent.

(e) Presenting either the standard tort claim form or the local government tort claim form satisfies the requirements of this chapter.

(f) The amount of damages stated on the claim form is not admissible at trial.

(4) No action subject to the claim filing requirements of **this section** shall be commenced against any local governmental entity, or against any local governmental entity's officers, employees, or volunteers, acting in such capacity, for damages arising out of tortious conduct until sixty calendar days have elapsed after the claim has first been presented to the agent of the governing body thereof. The applicable period of limitations within which an action must be commenced shall be tolled during the sixty calendar day period. For the purposes of the applicable period of limitations, an action commenced within five court days after the sixty calendar day period has elapsed is deemed to have been presented on the first day after the sixty calendar day period elapsed.

(5) With respect to the content of claims under **this section** and all procedural requirements in **this section**, **this section** must be liberally construed so that substantial compliance will be deemed satisfactory.

## 4.96.041
## Action or proceeding against officer, employee, or volunteer of local governmental entity — Payment of damages and expenses of defense.

(1) Whenever an action or proceeding for damages is brought against any past or present officer, employee, or volunteer of a local governmental entity of this state, arising from acts or omissions while performing or in good faith purporting to perform his or her official duties, such officer, employee, or volunteer may request the local governmental entity to authorize the defense of the action or proceeding at the expense of the local governmental entity.

(2) If the legislative authority of the local governmental entity, or the local governmental entity using a procedure created by ordinance or resolution, finds that the acts or omissions of the officer, employee, or volunteer were, or in good faith purported to be, within the scope of his or her official duties, the request shall be granted. If the request is granted, the necessary expenses of defending the action or proceeding shall be paid by the local governmental entity. Any monetary judgment against the officer, employee, or volunteer shall be paid on approval of the legislative authority of the local governmental entity or by a procedure for approval created by ordinance or resolution.

(3) The necessary expenses of defending an elective officer of the local governmental entity in a judicial hearing to determine the sufficiency of a recall charge as provided in *RCW 29.82.023 shall be paid by the local governmental entity if the officer requests such defense and approval is granted by both the legislative authority of the local governmental entity and the attorney representing the local governmental entity. The expenses paid by the local governmental entity may include costs associated with an appeal of the decision rendered by the superior court concerning the sufficiency of the recall charge.

(4) When an officer, employee, or volunteer of the local governmental entity has been represented at the expense of the local governmental entity under **subsection (1)** of **this section** and the court hearing the action has found that the officer, employee, or volunteer was acting within the scope of his or her official duties, and a judgment has been entered against the officer, employee, or volunteer under chapter 4.96 RCW or 42 U.S.C. Sec.

25

1981 et seq., thereafter the judgment creditor shall seek satisfaction for nonpunitive damages only from the local governmental entity, and judgment for nonpunitive damages shall not become a lien upon any property of such officer, employee, or volunteer. The legislative authority of a local governmental entity may, pursuant to a procedure created by ordinance or resolution, agree to pay an award for punitive damages.

(Reviser's note omitted.)

**4.96.050**
**Bond not required.**

No bond is required of any local governmental entity for any purpose in any case in any of the courts of the state of Washington and all local governmental entities shall be, on proper showing, entitled to any orders, injunctions, and writs of whatever nature without bond, notwithstanding the provisions of any existing statute requiring that bonds be furnished by private parties.