FILED
COURT OF APPEALS
DIVISION II

2014 JUN 10 AM 8:39

STATE OF WASHINGTON
BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| PACIFIC MARINE INSURANCE COMPANY; and ROBERT A. BELL, <br><br> Appellants, <br><br> v. <br><br> STATE OF WASHINGTON, through its Divisions, Department of Revenue and The Insurance Commissioner, <br><br> Respondents. | No. 43719-8-II <br><br><br><br> PUBLISHED OPINION |

WORSWICK, J. — Robert Bell and the Pacific Marine Insurance Company (PacMar) made a claim under the Washington Uniform Unclaimed Property Act (WUUPA)[1] for property being held by the State Department of Revenue (DOR). They filed this action in Thurston County Superior Court after the DOR refused to release the funds. They now appeal the superior court's denial of their summary judgment motion and its grant of summary judgment to the State.

After PacMar entered receivership and was liquidated under chapter 48.31 RCW, funds from the PacMar estate were transferred to the State treasury in 2000 and 2002, subject to escheat to the State after six years. Bell and PacMar argue that the funds could not legally escheat under RCW 48.31.155 because the PacMar funds did not fall within that statute's scope, and because the State violated WUUPA and violated Bell and PacMar's due process rights when it failed to provide them adequate notice about the transfer of the funds to the State prior to

---

[1] Chapter 63.29 RCW.

escheat. We hold that the superior court had jurisdiction to determine whether the DOR's decision was correct, and that because Bell and PacMar had no legal interest in the funds, they had no standing to challenge that DOR decision. We affirm the Thurston County Superior Court.

FACTS

Bell owned the Pacific Marine Holdings Corporation (PacHold), which was incorporated in California. PacHold was the sole shareholder of PacMar, which was incorporated in Washington State. The King County Superior Court affirmed the state insurance commissioner as the PacMar estate's receiver for the purpose of liquidation in 1989. Although PacMar was fully liquidated, it has never been legally dissolved.

A.    *Distribution of the PacMar Estate's Funds*

The King County Superior Court set August 1, 1996, as the final deadline for creditors to file claims against the PacMar estate. In 1999, the superior court entered an order approving the receiver's (Commissioner's) plan to close the PacMar estate and an order approving the Commissioner's plan for final distribution of the PacMar estate's funds. The Commissioner's court-approved plan for final distribution divided the creditors' claims into five classes, ranked A through F.[2] The plan paid the claims in classes A through D in full. But after retaining $51,450.00 for administrative costs, insufficient funds remained in the PacMar estate to pay any

---

[2] The record before us does not describe or name the members of classes E or F. Classes A, C, and D were consistent with the classes listed in former RCW 48.31.280 (1975-76) (no claims fell into class B and the record never defined class B). Former RCW 48.31.280 stated that class E claims were "[a]ll other claims." But former RCW 48.31.280 does not list a class F. Former RCW 48.31.280 (1993) completely overhauled the classes, turning them into eight classes listed by number rather than letter. The State asserts that the class E claims are "general creditor claims." Clerk's Papers (CP) at 18.

No. 43719-8-II

amount to the claims in classes E or F. Class E's claims totaled $916,820.43 and class F's claims totaled $213,427.29.

In 2000, the King County Superior Court discharged the receiver and closed the PacMar estate. The superior court's order transferred the PacMar estate's remaining funds to the State treasury in the following amounts:

1. Unclaimed funds of $22,958.56, meant to pay issued checks that were either outstanding or returned, and to pay claimants who were identified but could not be found.

2. Residual funds of $39,862.78, meant to pay any late presented bills.

In 2001, after the PacMar estate's closure, the PacMar estate acquired $38,907.48 in new funds from creditors. The Commissioner petitioned the superior court to transfer the new funds to the treasury, rather than reopen the estate and distribute these funds. The Commissioner explained that during the original, final distribution of the PacMar estate's funds, the Commissioner never expected to have funds available for distribution towards claims in class E, and thus, never adjudicated the individual claims in class E for their validity or amount. The Commissioner argued that the administrative costs of adjudicating the numerous class E claims would consume all of the PacMar estate's funds, leaving no funds to pay the class E claims, which were next in line to receive distributions from the PacMar estate. The superior court ordered that the PacMar estate would remain closed, and transferred the new funds to the treasury "in accordance with RCW 48.31.155." Clerk's Papers (CP) at 228.

After the new funds were transferred to the treasury, the treasury had custody of the following PacMar estate's funds:

3

1. Unclaimed funds of $22,958.56, transferred to the treasury in 2000 upon the PacMar estate's closure, meant to pay issued checks that were outstanding or returned, and to pay claimants who were identified but could not be found.

2. Residual funds of $39,862.78, transferred to the treasury in 2000 upon the PacMar estate's closure, meant to pay any late presented bills.

3. New funds of $33,751.97, transferred to the treasury in 2002 approximately two years after the PacMar estate's closure, representing funds acquired from insurance companies.

B.  *Bell and PacMar's Claims*

Bell, a British national, moved to New Zealand in 1987, and stopped following PacMar's liquidation in 1988. In 2010, Bell asked the Commissioner whether any funds remained in the PacMar estate. The Commissioner told Bell to ask the DOR. The DOR informed Bell that the treasury had received the remaining PacMar estate's funds as unclaimed property, and that Bell had 90 days to produce a court order entitling him to the PacMar estate's funds, or those funds would permanently escheat:

> You recently inquired about excess proceeds from the liquidation of [the PacMar estate]. . . .
>
> The funds currently held as unclaimed property were transferred to the state in response to a King County Court order. According to [RCW] 48.31.155, the funds were to be held in trust for six years and then escheat to the state.
>
> The Unclaimed Property section did not receive information as to whom the proceeds belong; therefore, we require a court order directing disbursement of the funds. Unless we are served with a notice of a court proceeding with respect to these funds within 90 days from the date of this letter the funds will permanently escheat to the state as directed in RCW 48.31.155.

CP at 127.

In Thurston County Superior Court, Bell and PacMar sued the State of Washington, through its divisions, the DOR and the State Insurance Commissioner. Bell and PacMar

No. 43719-8-II

petitioned the superior court to order the State to provide an accounting and to pay them the funds.

Both parties moved for summary judgment. In their motion for summary judgment, Bell and PacMar clarified that they were suing under RCW 63.29.260 of WUUPA. In its motion for summary judgment, the State argued that the funds had already escheated because more than six years had passed since the funds were transferred to the treasury. The State also argued that the Thurston County Superior Court had no subject matter jurisdiction over Bell and PacMar's claims because they were related to the PacMar receivership proceedings.

The superior court denied Bell and PacMar's motion for summary judgment and granted the State's motion for summary judgment. The superior court issued an opinion letter explaining its order:

> The parties agree that the issue before this court is simple—who has ownership of the unclaimed property currently held by the Washington State Treasurer in the amount of $73,614.75 or, alternatively stated, did the State properly deny plaintiffs' request to return the money to them as rightful owners.
>
> Plaintiffs made a number of procedural arguments related to the lack of notice of the receivership and final distributions, which they claim they did not know about during the receivership process. Plaintiffs also claim that such lack of notice constitutes a violation of due process that precludes the State from denying plaintiffs' request to return the property to them under the escheat statute, RCW 63.29.260.[3]
>
> This court has no subject matter jurisdiction over the King County receivership nor any ability to order any additional remedies as a result of any deficiencies (if any) in that process. The only issue before this court is the application of RCW 63.29.260 with respect to the $73,614.75 held by the State. Thus, the final orders entered in the receivership control. Whether or not Mr. Bell was properly a "claimant" in the PacMar estate, or not, is not an issue this Court

---

[3] The Thurston County Superior Court erroneously referred to RCW 63.29.260. The escheat statute is RCW 48.31.155.

5

can or should decide. Nor should this court decide the nature of any notice, or not, PacMar or Mr. Bell should have received in the receivership matter.

[Plaintiffs' argument that the State's internal communications bind the State] is not well taken under the case law relating to when estoppel applies to the State, or whether the State's denial of plaintiffs' claimed ownership interest is proper, which is the only issue now before this Court.

Under the summary judgment standard, CR 56, plaintiffs have failed to meet their burden to establish that they are entitled as a matter of law to recover the remaining property held by the State, payment of interest, or any order allowing plaintiffs to recover additional funds received after the closing of PacMar's liquidation proceedings. For these reasons, plaintiffs' motion for summary judgment is denied and their complaint is dismissed with prejudice.

CP at 341-42 (citation omitted). Bell and PacMar appeal the superior court's denial of summary judgment to them, and its grant of summary judgment to the State.

## ANALYSIS

We review summary judgment de novo, engaging in the same inquiry as the superior court. *Staples v. Allstate Ins. Co.*, 176 Wn.2d 404, 410, 295 P.3d 201 (2013). We affirm a summary judgment decision when no issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Staples*, 176 Wn.2d at 410; *see* CR 56. We may affirm the superior court's summary judgment decision on any ground supported by the record. *LaMon v. Butler*, 112 Wn.2d 193, 200-01, 770 P.2d 1027 (1989).

Our fundamental objective in statutory interpretation is to give effect to the legislature's intent. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). If a statute's meaning is plain on its face, then we give effect to that plain meaning as an expression of legislative intent. *Wash. Pub. Ports Ass'n v. Dep't of Revenue*, 148 Wn.2d 637, 645, 62 P.3d 462 (2003). We discern plain meaning not only from the provision in question but also from closely related statutes and the underlying legislative purposes. *Wash. Pub. Ports Ass'n*, 148

Wn.2d at 645. If a statute is susceptible to more than one reasonable interpretation after this inquiry, then the statute is ambiguous and we may resort to additional canons of statutory construction or legislative history. *Campbell & Gwinn*, 146 Wn.2d at 12.

## I. THE THURSTON COUNTY SUPERIOR COURT'S SUBJECT MATTER JURISDICTION

Bell and PacMar argue that the Thurston County Superior Court erred by ruling that it lacked subject matter jurisdiction over their claims. We hold that the superior court had subject matter jurisdiction to determine the propriety of the DOR's escheat decision, and that the King County receivership orders control.

We review a superior court's subject matter jurisdiction de novo. *Cole v. Harveyland, LLC*, 163 Wn. App. 199, 205, 258 P.3d 70 (2011). A party may raise a lack of subject matter jurisdiction at any time during a proceeding. *Skagit Surveyors & Eng'rs, LLC v. Friends of Skagit County*, 135 Wn.2d 542, 556, 958 P.2d 962 (1998). "Subject matter jurisdiction governs the court's authority to hear a particular type of controversy." *Ralph v. Dep't. of Natural Res.*, 171 Wn. App. 262, 267, 286 P.3d 992 (2012), *review granted*, 176 Wn.2d 1024 (2013). RCW 48.31.111(2) limits Washington courts' jurisdiction over matters related to insurance receivership proceedings:

> No court of this state has jurisdiction to entertain a complaint praying for the dissolution, liquidation, rehabilitation, sequestration, conservation, or receivership of an insurer, or praying for an injunction or restraining order or *other relief preliminary to, incidental to, or relating to the proceedings, other than in accordance with this chapter.*

(Emphasis added.) We analyzed RCW 48.31.111 to determine the meaning of "relating to the proceedings" in *St. John Medical Center v. Department of Social and Health Services*, 110 Wn. App. 51, 60, 38 P.3d 383 (2002). There, we applied a federal test used to determine whether

requested relief "related to" a bankruptcy proceeding to analyze whether a requested relief

"related to" an insurance company receivership proceeding under chapter 48.31 RCW. 110 Wn.

App. at 62. The adopted federal test asks

> "whether the outcome of [the current] proceeding *could conceivably have any effect on the estate being administered in bankruptcy.* [T]he proceeding need not necessarily be against the debtor or against the debtor's property"; instead, the action is related to the bankruptcy proceeding if the outcome of the action could alter the "debtor's rights, liabilities, options, or freedom of action (either positively or negatively)" or in any way impact the handling and administration of the bankruptcy estate.

110 Wn. App. at 62 (emphasis added) (some alterations in original) (citation omitted) (quoting

*Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984)).

Here, Bell and PacMar sued under the authority granted by RCW 63.29.260 of WUUPA

to challenge the DOR's decision. CP at 4; *see* CP at 32. RCW 63.29.260 states:

> A person aggrieved by a decision of the [DOR][4] or whose claim has not been acted upon within ninety days after its filing may bring an action to establish the claim in the superior court of Thurston County naming the [DOR] as a defendant. The action must be brought within ninety days after the decision of the [DOR] or within one hundred eighty days after the filing of the claim if the [DOR] has failed to act on it.

We hold that when a litigant sues under RCW 63.29.260 to challenge a DOR decision

that the funds of a liquidated insurance company will escheat to the State, the superior court has

subject matter jurisdiction to review the DOR's decision, but must allow the receivership orders

to control its review. If such a superior court were to look beyond the receivership orders, its

decision would "relate to" the receivership because it "'could conceivably have any effect on the

---

[4] *See* RCW 63.29.010(5).

estate being administered in bankruptcy.'" *St. John Med. Ctr.*, 110 Wn. App. at 62 (quoting *Pacor, Inc.*, 743 F.2d at 994).

Thus, the Thurston County Superior Court had subject matter jurisdiction over the limited issue of whether the DOR's decision, that the funds would escheat to the State, was erroneous. But the receivership orders control its review. In light of the superior court's limited review, we next consider whether Bell and PacMar had standing to assert their claim that the DOR's decision was erroneous.

## II. STANDING TO CHALLENGE THE DOR'S DECISION UNDER WUUPA

Bell and PacMar argue that they had standing to challenge the DOR's decision because they had a legal interest in the PacMar estate's funds. The State argues that Bell and PacMar had no standing to assert their claim because they had no legal interest in the funds. We agree with the State.[5]

Standing is a threshold issue that we review de novo as a question of law. *See In re Estate of Becker*, 177 Wn.2d 242, 246, 298 P.3d 720 (2013). Without standing, a court lacks the

---

[5] In 1993, the legislature significantly amended RCW 48.31.280. *Compare* former RCW 48.31.280 (1975-76) *with* former RCW 48.31.280 (1993). The King County Superior Court entered orders appointing a receiver for liquidation prior to 1993, but made all of its other orders years after the 1993 amendments.

We apply former RCW 48.31.280 (1993) for two reasons. First, both parties argue from former chapter 48.31 RCW (1993) on appeal. Second, "[a] statute applies 'when the *precipitating event* for the application of the statute occurs *after* the effective date of the statute, even though the precipitating event had its origin in a situation existing prior to the enactment of the statute.'" *Myles v. Clark County*, 170 Wn. App. 521, 532, 289 P.3d 650 (2012), *review denied*, 176 Wn.2d 1015 (2013) (quoting *Aetna Life Ins. Co. v. Wash. Life & Disability Ins. Guar. Ass'n*, 83 Wn.2d 523, 535, 520 P.2d 162 (1974)). Here, the precipitating event for the distribution statute's application is the entry of the King County Superior Court's orders occurring after the 1993 amendments, not its orders appointing the receiver before 1993.

necessary jurisdictional power to entertain a party's claim. *High Tide Seafoods v. State*, 106 Wn.2d 695, 702, 725 P.2d 411 (1986).

To have standing, a claimant must establish that injury has occurred to a legally protected right. *Sprague v. Sysco Corp.*, 97 Wn. App. 169, 176 n.2, 982 P.2d 1202 (1999). A party has standing to raise an issue if that party "'has a distinct and personal interest in the outcome of the case.'" *Timberlane Homeowners Ass'n, Inc. v. Brame*, 79 Wn. App. 303, 307, 901 P.2d 1074 (1995) (quoting *Erection Co. v. Dep't of Labor & Indus.*, 65 Wn. App. 461, 467, 828 P.2d 657 (1992)).

At the beginning of a delinquency proceeding, the superior court appoints the Commissioner as the receiver and grants the Commissioner title to the delinquent insurance company's assets. When the Commissioner is ready to distribute the delinquent insurance company's post-liquidation funds to fulfill creditors' claims, former RCW 48.31.280 (1993) states:

> The priority of distribution of claims from the insurer's estate is as follows: *Every claim in a class must be paid in full or adequate funds retained for payment before the members of the next class receive any payment; no subclasses may be established within a class*; and no claim by a shareholder, policyholder, or other creditor may circumvent the priority classes through the use of equitable remedies.

(Emphasis added.) Former RCW 48.31.280 then divides creditors' claims into prioritized classes. Under former RCW 48.31.280, shareholders fall within the lowest priority class, and the liquidated insurance company does not fall within any class.

Here, the record makes clear that the class E claims were next in line to receive payment from the PacMar estate. The PacMar estate has not paid the class E claims, due to the administrative costs of adjudicating those claims. The PacMar estate does not have adequate

10

funds retained for payment of the class E claims because only $73,614.75 is available for distribution, and the class E claims total $916,820.43. Until the PacMar estate pays the class E claims in full, or has adequate funds retained for their payment, former RCW 48.31.280 forbids payment to any other creditors.

Bell and PacMar do not assert that their claims are class E claims, nor do they assert that former RCW 48.31.280 gives their claims (claims of the liquidated insurance company and its indirect shareholder) a higher priority to the funds than the class E claims. Thus, we hold that the King County receivership orders established that Bell and PacMar had no legal interest in the PacMar estate's funds because the receivership orders established that the class E claims are next in line to receive payment, and the PacMar estate has neither paid nor retained adequate funds for the payment of these claims.

Because the receivership orders established that Bell and PacMar had no legal interest in the PacMar estate's funds, Bell and PacMar would never have had any entitlement to the funds. Because they would never have had any entitlement to the funds, Bell and PacMar had no distinct and personal interest in the outcome of the case, and thus, they lacked standing to challenge the DOR's decision. To assert a legal interest in the funds, Bell and PacMar must move to reopen the King County receivership for a new determination as to their legal interest in those funds.[6]

---

[6] Because Bell and PacMar had no legal interest in the liquidated PacMar estate's funds, they had no legitimate claim of entitlement to a vested property right in those funds, and thus, had no due process right as to those funds. *See* U.S. CONST. amend. XIV, § 1; WASH. CONST. art. 1, § 3; *Dellen Wood Prods., Inc. v. Dep't of Labor & Indus.*, ___ Wn. App. ___, 319 P.3d 847, 860 (2014).

11

No. 43719-8-II

We affirm the Thurston County Superior Court because Bell and PacMar had no standing to assert their claim under WUUPA because they had no legal interest in the liquidated PacMar estate's funds. We do not consider the parties' remaining arguments because such consideration is unnecessary to resolve this case, given Bell and PacMar's lack of standing.

_____
Worswick, J.

We concur:

_____
Hunt, P.J.

_____
Melnick, J.

12